**E-FILED**
Monday, 02 June, 2008  03:13:07 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ESTATE OF AMON PAUL CARLOCK, JR., deceased By Mary L. Andreatta-Carlock, Executor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SANGAMON COUNTY; SANGAMON COUNTY SHERIFF'S DEPARTMENT; SANGAMON COUNTY JAIL; NEIL WILLIAMSON, SHERIFF OF SANGAMON COUNTY; TERRY DURR, SUPERINTENDENT OF SANGAMON COUNTY JAIL, RON BECKNER, ADMINISTRATOR OF SANGAMON COUNTY JAIL; OFFICERS TODD GUY; KEVIN FURLONG; CAIN; SGT. HUDGENS; AND OTHER UNIDENTIFIED SANGAMON COUNTY CORRECTIONAL OFFICERS; LEE ANNE BRAUER, RN; L. RAMSEY, LPN; N. WEST, LPN; AND OTHER UNIDENTIFIED MEDICAL PERSONNEL, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 08-3075 Judge Jeanne E. Scott Magistrate Judge Charles H. Evans |
| Defendants. | ) ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants, SANGAMON COUNTY, SANGAMON COUNTY SHERIFF'S DEPARTMENT, NEIL WILLIAMSON, Sheriff of Sangamon County, TERRY DURR, Superintendent Of Sangamon County Jail, RON BECKNER, Correctional Officers TODD GUY, KEVIN FURLONG, CANDICE CAIN; SGT. RON HUDGINS; LEE ANNE BRAUER, RN; LADORISE RAMSEY, LPN, and NICEY WEST, LPN, by and through their attorneys, HINSHAW & CULBERTSON LLP, for their Memorandum of Law In Support Of Motion To Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), state as follows:

## I.    INTRODUCTION

The estate of the deceased Amon Paul Carlock, Jr., by Mary L. Andretta-Carlock, Executor, filed this three count civil rights complaint pursuant to 42 U.S.C. §1983 on March 19, 2008.   Named as defendants are Sangamon County, Sangamon County Sheriff's Department, Sangamon County Jail (collectively "the County"), Sheriff Neil Williamson, Superintendent Terry Durr, Ron Beckner (the Sangamon County Jail Administrator), and Correctional Officers Todd Guy, Kevin Furlong, Cain, Sgt. Hudgins, Lee Anne Brauer, R.N., Ladorise Ramsey, L.P.N., Nicey West, L.P.N., and other unidentified Sangamon County Correctional Officers and medical personnel.  The undersigned attorneys make no appearance for unidentified parties, and only appear for the identified parties.

It is argued below that the Complaint fails to state a claim upon which relief can be granted. All defendants move to dismiss each count.

Counts I, II and III all share the same pleading irregularities and should be dismissed for failure to state a claim in that:  (i) the individual defendants are not employed by Sangamon County, and the Sangamon County Jail is not a legal entity; (ii) the individual defendants lack the requisite personal involvement; and (iii) punitive damages are not available against the Sangamon County Sheriff's Department (" Department").

In addition to the above, the bases for dismissal of Count I are that: (i) Count I is pleaded in a confusing manner and pursuant to Fed. R. Civ. P. 10(b) should be pleaded as separate counts; (ii) the allegations regarding derogatory comments, nudity, bible deprivation and deliberate indifference to serious medical needs: do not rise to the level of a constitutional deprivation, are duplicative and/or are not properly brought as a cruel and unusual punishment claim; and (iii) the Sangamon County Sheriff's Department cannot be held liable on *respondeat*

2

*superior* principles.

The bases for dismissal of Count II are that: (i) suing individual defendants is improper in a *Monell* claim; (ii) no true municipal policy has been identified, and (iii) there are insufficient allegations to support a failure to train claim.

The bases for dismissal for Count III are that: (i) the individual defendants lack the requisite personal involvement; (ii) for the individual defendants who are non-medical personnel, they are entitled to defer to the judgement of medical personnel; (iii) the claims against the Sangamon County Sheriff's Department are barred because it does not have *respondeat superior* liability, and no violation of a policy, custom of practice has been alleged.

## II.     MOTION TO DISMISS STANDARD

To state a claim under federal notice pleadings standards, all the complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief. . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776-777 (7th Cir. 2000) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (other citation omitted)). However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' . . ." *Id.* (quoting *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14). "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1974).

60174130v1 884755

III.    **FACTS**

   A.    **Count I**

Count I is brought pursuant to Section 1983 and alleges cruel and unusual punishment and excessive use of force. Plaintiff alleges on or about October 9, 2007, after an 11-day hospital stay, the Decedent, Amon Paul Carlock, Jr., was transferred directly from St. John's Hospital in Springfield, Illinois by the U.S. Marshal to the Sangamon County Jail for pretrial detainment. (Complaint, ¶7).  Mr. Carlock is alleged to have remained in the care and custody of defendants until the date of his death on November 16, 2007.  (*Id.*, ¶8).

Plaintiff alleges, on information and belief, that during the Decedent's pretrial detainment at the Sangamon County Jail, "some" of the individual defendants intentionally and/or recklessly mistreated him in a degrading and humiliating manner on various occasions, including but not limited to, November 16, 2007, the day of his death.  (*Id.*, ¶9).  The mistreatment included: being hosed down in his cell when he was found to be incontinent of bowel and/or bladder; being paraded nude down a hallway to the shower in front of other inmates, including female inmates; being laughed at, ridiculed and joked about because of his unresponsiveness and/or incontinence; being deprived of his right to have the Bible which was delivered to the Jail for his use; being tasered when he failed to follow verbal commands under circumstances where he was no threat to the safety of others; and being treated with deliberate and/or reckless indifference to his declining medical condition.  (Complaint, ¶10).

Plaintiff alleges that on November 16, 2007, excessive force was used against the Decedent when one or more of the individual defendants [it is not alleged who] deployed a taser gun and applied significant pressure on the Decedent's upper torso while he was laying face down inside the Sangamon County Jail.  (Complaint, ¶12).  Allegedly, as a direct and proximate

4

result of the defendants' actions (including actions of other unidentified Sangamon County Correctional Officers), Mr. Carlock's heart and respiration ceased, and he died shortly thereafter. (Complaint, ¶13).

It is further alleged that some of the individual defendants used excessive and/or unreasonable force on November 16, 2007, in attempting to prepare Decedent for transfer to a local hospital for medical evaluation and treatment in violation of his Fourth Amendment rights to be free from unreasonable seizures. (Complaint, ¶14). Plaintiff prays for a judgment against all named defendants in an amount to be determined at trial, punitive damages, attorney's fees and costs.

**B.      Count II**

Count II is a *Monell* claim brought against the County defendants and the individual defendants. Plaintiff alleges that the County and individual defendants have a pattern and practice of (i) deploying taser guns without sufficiently training their officers regarding their use; (ii) encouraging the deployment of taser guns when such use of force is not necessary or justified; (iii) deploying taser guns knowing that the use of such weapons can cause permanent and serious bodily harm, especially when coupled with force which restricts respiration; and (iv) not disciplining its correctional officers who have used taser guns and used them inappropriately. (Complaint, ¶¶17-20).

Plaintiff alleges that the inappropriate use of a taser, coupled with the force which restricted Decedent's respiration, caused or contributed to the case of Mr. Carlock's death on November 16, 2007. (Complaint, ¶22). The above policies and procedures of the County allegedly caused the Decedent to be deprived of his life without due process of law. (Complaint, ¶21). Plaintiff prays for a judgment against defendants, a declaration that the acts and practices complained of are in violation of 42 U.S.C. §1983, and injunction permanently restraining these

5

violations, compensatory damages in an amount to be determined at trial, punitive damages, and reasonable attorney's fees, costs and pre-judgment interest as provided by 42 U.S.C. §2000(e)(5)(K) and (J).

C.    Count III

Count III is a deliberate indifference to serious medical needs claim brought pursuant to Section 1983. Plaintiff alleges that during the time Carlock was held as a pretrial detainee in the Jail, the defendants received actual and constructive notice that he was medically unstable and in need of regular and continuous medical assessment, monitoring and treatment, including:  an October 9, 2007 notice from the U.S. Marshal's Office regarding the Decedent's health conditions and medications; actual notice provided to defendants on October 17, 2007 by U.S. Magistrate Judge Byron Cudmore requesting Decedent's prescription medication to be monitored; Decedent's obvious suffering of chronic health conditions, including diabetes and severe depression; Decedent's taking several prescribed medications, allegedly known to all defendants; alleged knowledge by defendants that the medications required regular and continuous monitoring, including behavioral monitoring and blood tests.  (Complaint, ¶24).

Plaintiff further alleges that Decedent was in need of immediate medical care prior to November 16, 2007, and on November 15, 2007, defendants scheduled him to be transported via ambulance to the hospital on the morning of November 16, 2007, for medical evaluation and possible medical adjustments prior to the acts complained of herein.  (Complaint, ¶27).  Plaintiff alleges that despite defendants' knowledge of Mr. Carlock's critical medical care needs, defendants mistreated him by delaying his medical treatment for conditions which rendered him at times unresponsive and by tasering him while he was incapacitated and lying face down inside the Jail and by restricting his respiration.  (Complaint, ¶28).

Plaintiff alleges that even though defendants were trained and had emergency medical

60174130v1 884755

equipment available, they failed to provide CPR and other emergency medical services to Mr. Carlock on November 16, 2007, after they had noted his medical and respiratory distress, his feet and lack of pedal pulses.  (Complaint, ¶29).  Plaintiff alleges that the above acts and omissions were willful and/or reckless, and as a proximate result, Decedent suffered pain and died on November 16, 2007.  (Complaint, ¶¶30-31).  Plaintiff prays for compensatory damages to be determined at trial, punitive damages and reasonable attorney's fees and costs.

## IV.    ARGUMENT

### ARGUMENTS APPLICABLE TO ALL COUNTS (I, II, AND III)

All defendants (Williamson, Durr, Beckner, Correctional Officers Guy, Furlong, Cain, Hudgins, and Brauer, R.N., Ramsey, L.P.N., West, L.P.N. and the Sangamon County Sheriff's Department and Sangamon County) move to dismiss Counts I, II, and III for the reasons stated below.  These arguments are also incorporated by reference in Section IV, subsections D through J of this Memorandum.

### A.    Sangamon County and the Sangamon County Jail Are Improper Defendants

#### 1.    Sangamon County is Not the Defendant's Employer

In all three counts, Plaintiff has named as Defendants, Sangamon County and the Sangamon County Jail.  It is well established in Illinois that the Office of Sheriff is created by Article VII, Section 4 of the Illinois Constitution of 1970 and, as such, is an independently elected officer and is not an employee of the county in which the sheriff serves.  *Carver v. Sheriff of LaSalle County*, 203 Ill. 2d 497, 512, 787 N.E. 2d 127, 136 (citing Illinois Constitution 1970, Article VII, Section 4(c)); *Moy v. County of Cook*, 159 Ill. 2d 519, 640 N.E. 2d 926 (1994); *Franklin v. Zaruba*, 150 F. 3d 682, 686 n. 4 (7th Cir. 1998).

Since the individual defendants are employed by the Sangamon County Sheriff's Department, Sangamon County has no liability under §1983 -- other than being obligated to

60174130v1 884755

provide funds to the Sheriff in the event an official capacity judgment is entered against the Sheriff's Office. *Carver v. Sheriff of LaSalle County,* 203 Ill. 2d 497, 516, 787 N.E. 2d 127, 139 (Ill. 2003).[1] It is, therefore, improper to sue Sangamon County for its own liability for the allegedly unconstitutional acts described in the Complaint.

2.    <u>Sangamon County Jail is Not a Legal Entity</u>

Similarly, "Sangamon County Jail" is not a legal entity and cannot be sued under Section 1983. *Wemple v. Illinois State Police*, 2005 WL 2001150 at *3 (N.D. Ill. 2005)(citing *Magnusson v. Cassarella*, 812 F. Supp 824, 827 (N.D. Ill. 1992); Ill. Const., Art. VII, Sec. 1 (county jails not identified as a separate and individual legal entity)).

**B.    The Individual Defendants Lack the Requisite Personal Involvement**

The Complaint names 10 individuals as defendants: (1) Sheriff Neil Williamson, (2) Superintendent Terry Durr, (3) jail administrator Ron Beckner, (4) Officer Todd Guy, (5) Officer Kevin Furlong, (6) Officer Cain, (7) Sergeant Hudgins, (8) Lee Anne Brauer, RN, (9) Ladorise Ramsey, LPN, and (10) Nicey West, LPN (collectively "individual defendants"). The individual defendants are named in all three counts of the Complaint. These defendants should be dismissed because the Complaint fails to demonstrate that any were personally involved in the alleged constitutional violations.

It has long been established that a plaintiff may only bring a Section 1983 claim against defendants who were personally responsible for the constitutional deprivation. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001). A plaintiff cannot rely on the doctrine of *respondeat superior* to hold supervisory officials liable for the misconduct of their subordinates.

---

[1] Sangamon County is, however, an indispensable and necessary party if the plaintiff attempts to seek damages against the Sheriff in his official capacity. *Carver v. Sheriff of LaSalle County*, 324 F. 3d at 948 (7th Cir. 2003). Therefore, while Sangamon County should arguably be named in the suit for purposes of paying a potential judgment, it should not have to answer any of the substantive allegations in any count of the Complaint.

60174130v1 884755

*Id.*

Although direct participation by a defendant is not necessary, there must be some showing that he acquiesced in some demonstrable way in the alleged constitutional violation. *Palmer v. Marion County*, 327 F. 3d 588, 594 (7th Cir. 2003)(citing *Kelly v. Municipal Courts of Marion County*, 97 F. 3d 902, 909 (7th Cir. 1996); *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986)); *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir.2001). In order to hold a supervisory defendant liable, the plaintiff must demonstrate that the supervisor knew about the unconstitutional conduct, facilitated it, approved it, condoned it, or purposely turned a blind eye to it for fear of what he might see. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1992).

A pleading deficiency that is consistent in all three counts is that nowhere in the Complaint does the Plaintiff identify any specific acts taken by any individual defendant. Plaintiff does not even know the complete names of many of the defendants. Numerous allegations in the Complaint demonstrate the complete absence of any support for any individual's personal involvement.

For example, in paragraph 9, Plaintiff, in good faith, can only allege that "some" of the individual defendants mistreated Mr. Carlock – and even at that, the allegation is predicated upon information and belief. Plaintiff never identifies who "some" of these people are. Similarly, in paragraph 12, Plaintiff alleges that "one or more of the individual defendants deployed a taser gun. . ." That certainly leaves open the possibility that as many as 9 of the individual defendants had nothing to do with the deployment of the taser. Curiously, Plaintiff does not identify the identity of the "one" defendant who deployed the taser, leaving the individual defendants in the dark as to whom the plaintiff is directing liability. Paragraph 14 reiterates the notion that only "some" of the defendants used excessive force.

60174130v1 884755

Count II is a *Monell* claim. Though Plaintiff fails to establish personal involvement for the Jail officials in that count as well, for the reasons stated more fully below, individual defendants are improper in a *Monell* claim.

As to Count III, in addition to not identifying any specific individual who took any specific action, Plaintiff's allegations strongly suggest that she is attempting for affix liability against the 10 individual defendants on the basis of imputed or assumed knowledge based upon their positions within the jail. This is demonstrated by her allegations in paragraph 27 that "Defendants scheduled the Decedent to be transported via ambulance to the hospital. . ." She does not say who specifically did that. As contemplated by *Bell Atlantic*, it is simply not plausible that all 10 defendants scheduled the Decedent to go to the hospital.  Nor is it plausible that each and every one of the 10 individual defendants received actual <u>and</u> "constructive" notice (*see* paragraph 24) of certain events and/or Decedent's medical condition, especially when their titles (i.e., Superintendent, Administrator, Sergeant, and Correctional Officer) suggest that they had nothing to do with the provision of medical care in the Jail. It is w

It is well established in the Seventh Circuit that, "[e]xcept in the unusual cae where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals." *Johnson v. Doughty*, 433 F.3d 1001, 1011 (quoting *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002)). Therefore, as non-medical personnel, defendants Williamson, Durr, Beckner and Correctional Officers Todd Guy, Kevin Furlong, Cain, Sgt. Hudgins should be dismissed. As to the medical defendants – Lee Anne Brauer, R.N., Ladorise Ramsey, L.P.N., Nicey West, L.P.N. – Plaintiff has not pleaded any specific acts or inactions taken by them, thus failing to establish their individual personal involvement.

10

In conclusion, it is obvious that rather than take the time to figure out who was involved, the Plaintiff has taken a wholesale or "kitchen sink" approach in naming defendants and has not established the personal involvement of each defendant. Such an approach is antithetical the concept of establishing personal responsibility under Section 1983 as well as the plausibility principles established in *Bell Atlantic*, which require that the allegations in a complaint plausibly suggest that the plaintiff has a right to relief, beyond a "speculative level." *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14). Quite simply, a person should not be made to defend a federal lawsuit when the plaintiff cannot articulate –even in the most cursory fashion – what it is the defendant did wrong.

### C.    Plaintiff's Request For Punitive Damages Against A Municipality Is Improper

In each Count, plaintiff seeks punitive damages against Sangamon County and the Sangamon County Sheriff's Department. Notwithstanding Plaintiff's improperly naming Sangamon County, punitive damages are generally unavailable against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

Therefore, in light of established Supreme Court precedent, plaintiff's prayer for punitive damages against Sangamon County and the Sangamon County Sheriff's Department should be stricken from the Complaint.

### ARGUMENTS APPLICABLE TO COUNT I

All defendants (Williamson, Durr, Beckner, Correctional Officers Guy, Furlong, Cain, Hudgins, and Brauer, R.N., Ramsey, L.P.N., West, L.P.N. and the Sangamon County Sheriff's Department and Sangamon County) move to dismiss Count I for the reasons stated below. In addition to the arguments below, defendants adopt the arguments above in Section IV, subsections A through C.

11

**D.    Count I Is Pleaded In A Confusing Manner, And Each Claim Founded On A Separate Transaction Or Occurrence Should Be Stated In Separate Counts To Facilitate A Clear Presentation Of The Matters Attempted To Be Set Forth**

Count I is confusing in the way it has been pleaded. On the one hand, paragraph 10 alleges cruel and unusual punishment, which is normally an Eighth Amendment claim, but is properly analyzed as a Fourteenth Amendment claim for a pretrial detainee such as Mr. Carlock.[2] On the other hand, paragraph 14 alleges a violation of the Fourth Amendment's unreasonable seizures provision with respect to the preparation of Decedent for his transfer to the hospital for medical evaluation. The claims appear to be based on separate transactions or occurrences and should, therefore, be stated in separate counts to facilitate the clear presentation of the matters attempted to be set forth.  Fed. R. Civ. P. 10(b). Other allegations in Count I are also inconsistent with an Eighth Amendment claim and involve separate transactions.

First, the nudity allegations in paragraph 10B could be pleaded as a fourth, or possibly an Eighth/Fourteenth Amendment claim.  *Johnson v. Phelan*, 69 F.3d 144, 145-147 (7th Cir. 1995) (distinguishing between Fourth Amendment unreasonable searches/substantive due process privacy claims and Eighth Amendment cruel and unusual punishment claims).

Second, the Bible claim in paragraph 10D is one that would customarily be brought as a First Amendment free exercise of religion claim. Third, the deliberate indifference to serious medical needs allegation in 10F, while usually brought as a cruel and unusual punishment claim,

---

[2]    A pretrial detainee's claim falls under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, but "there is 'little practical difference between the two standards.'" *Mayoral v. Sheehan*, 245 F.3d 934, 938 (7th Cir. 2001) (citing *Weiss v. Cooley*, 230 F.2d 1027 (7th Cir. 2000). "The Due Process Clause protects pretrial detainees by prohibiting the State from punishing them. . . . (citations omitted). These protections are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998)(quoting *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983). Like the Eighth Amendment, the plaintiff must pass an objective and subjective test. The deprivation must be sufficiently serious to rise to 'punishment,' and the defendants must have acted with a "sufficiently culpable state of mind." *Id*. at 473.

12

is duplicative of the allegations already present in Count III – a stand alone claim for deliberate indifference to serious medical needs. Therefore, paragraph 10 F should be dismissed because it is duplicative of Count III. *Robinson v. Sappington*, 351 F.3d 317, 340 (7th Cir. 2003).

In summary, given the ambiguities raised by the way Count I has been pleaded, it is respectfully suggested that pursuant to Fed. R. Civ. P. 10(b), the Court require Plaintiff to (i) bring their Fourth and Eighth Amendment claims as separate counts, (ii) dismiss paragraph 10F as duplicative of Count III, and (iii) require a separate count to be pleaded for any First Amendment claims dealing with denial of the Bible. Requiring same would facilitate a clearer presentation of the matters attempted to be set forth.

> **E.     Certain Claims by Plaintiff In Count I Do Not Rise To The Level Of A Constitutional Infirmity And/Or Are Not Properly Brought As Claims For Cruel And Unusual Punishment**

Notwithstanding the confusing manner in which Count I has been pleaded, paragraph 10 contains at least two allegations which, if true, do not state a claim for violation of the Constitution.

> 1.     Being "paraded" nude

Plaintiff alleges that Mr. Carlock was "paraded nude" down a hallway to the shower in front of other inmates, including female inmates. (Complaint ¶ 10B).  Irrespective of whether Plaintiff intends to allege a Fourth or Eighth Amendment violation, the allegations fail to state a claim.

*Johnson, supra*, set for the standard to be applied for analyzing Fourth Amendment claims challenging observation of nude inmates:

> [*Bell v.*] *Wolfish* [441 U.S. 520 (1979] assumed without deciding that prisoners retain some right of privacy under the fourth amendment. Five years later the Court held that they do not. *Hudson v. Palmer*, 468 U.S. 517, 526-30, 104 S. Ct. 3194, 3200-02, 82 L.Ed.2d 393 (1984), observes that privacy is the thing most surely extinguished by a judgment committing someone to prison. Guards take

60174130v1 884755

control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After *Wolfish* and *Hudson*, monitoring of naked prisoners is not only permissible-wardens are entitled to take precautions against drugs and weapons (which can be passed through the alimentary canal or hidden in the rectal cavity and collected from a toilet bowl)-but also sometimes mandatory. Inter-prisoner violence is endemic, so constant vigilance without regard to the state of the prisoners' dress is essential. Vigilance over showers, vigilance over cells-vigilance everywhere, which means that guards gaze upon naked inmates.

*Johnson*, 69 F.3d at 145.

It is clear, therefore, that Mr. Carlock had no fourth amendment privacy interest in not being seen nude in the Sangamon County Jail.

As to any Eighth/Fourteenth Amendment claim, plaintiff has not alleged any: particular susceptibility of the Decedent, design by any defendant to inflict psychological injury, or sort of claim which *Hudson* holds in reserve to ameliorate "calculated harassment unrelated to prison needs." *Johnson*, 69 F. 3d at 147; *see also Hudson*, 468 U.S. at 530. Therefore, paragraph 10B should be dismissed.

14

## 2. Derogatory Remarks Are Not Actionable

Plaintiff also claims that defendants laughed at, ridiculed and joked about Mr. Carlock because of his unresponsiveness and/or incontinence. (Complaint, par. 10(C)). It is clear that such derogatory or stray remarks, while unprofessional, do not violate the constitution. "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987) (*per curiam*) (Eighth Amendment); *Patton v. Przyblski*, 822 F.2d 697, 700 (7th Cir. 1987) (due process); *Williams v. Bramer*, 180 F.3d 699, 705-06 (5th Cir. 1999) (equal protection); *Shabazz v. Cole*, 69 F.Supp.2d 177, 199-201 (D.Mass.1999) (collecting cases)). Therefore, this portion of Count I should be dismissed for failure to state a claim upon which relief can be granted.

**F.** **The Sangamon County Sheriff's Department Cannot be Held Liable on** ***Respondeat Superior*** **Principles**

The Sangamon County Sheriff's Department is named as a Defendant in Counts I, II, and III. Absent allegations of an unconstitutional municipal policy custom or practice (there are none in Count I and III), the Department has no *respondeat superior* liability under Section 1983 for the acts of the individual defendants. *Monell*, 436 U.S. 658, 691 (1978). Therefore, the Department should be dismissed from Count I.

## ARGUMENTS APPLICABLE TO COUNT II

All Defendants (Williamson, Durr, Beckner, Correctional Officers Guy, Furlong, Cain, Hudgins, and Brauer, R.N., Ramsey, L.P.N., West, L.P.N. and the Sangamon County Sheriff's Department, Sangamon County, and the entity referred to as the "Sangamon County Jail") move to dismiss Count II for the reasons stated below. In addition to the arguments below, defendants adopt by reference the arguments set forth above in Section Iv, subsections A through C.

60174130v1 884755

### G.    Suing Individual Defendants Is Improper in a *Monell* Claim

Count II is brought as a *Monell* claim.  In addition to the County Defendants, Plaintiff sued the 10 individual defendants. (*see* Count II, Prayer for Relief).  Because it is well established that individuals are improper defendants in *Monell* claims, they should be dismissed.

Unless there is an unconstitutional policy, there cannot be municipal liability; only individual-capacity liable is possible.  *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F. 3d 509, 514-15 (7th Cir. 2007).  "The 'official policy' requirement for liability under §1983 is to 'distinguish acts as a municipality from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *Sims,* 506 F.3d at 515 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

Units of local government are responsible only for their policies rather than misconduct by their workers; misbehaving employees are responsible for their own conduct.  *Id.* (citing *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007); *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)); *Calusinski v. Kruger*, 24 F. 3d 931, 936 (7th Cir. 1994) ("a plaintiff must show that the municipal policy or custom and usage proximately caused the alleged unconstitutional conduct, . . . and this usually requires more than a single incident of unconstitutional conduct."  (internal citations omitted).

Where, as here, individual liability is already sought in Counts I and III for the same conduct at issue in Count II, it is improper to name individual defendants.  The only appropriate defendant (recognizing that liability is denied) is the Sangamon County Sheriff's Department, and all other defendants should be dismissed.

### H.    Plaintiff Has Not Identified Any True Municipal Policy

Not only has plaintiff named improper defendants and failed to identify their personal

16

involvement, Count II fails to state a *Monell* claim against the Sangamon County Sheriff's Department because there are insufficient allegations of a municipal policy.[3]

It is well established that under *Monell*, an official policy can be demonstrated by: "(1) an express policy that causes a constitutional deprivation when force; (2) widespread practice that is so permanent and well-settled that it constitutes a custom and practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Sims*, 506 F.3d at 515 (citing *Lewis*, 496 F.3d at 656); *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

Although there is not a heightened pleading standard for *Monell* claims (*Sims*, 506 F. 3d at 514), the complaint must allege a direct causal link between a policy or custom of the Sheriff's Department and the alleged constitutional violations. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). The Supreme Court has admonished that, "'policy' generally implies a course of action consciously chosen from among various alternatives." *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985)).

In a case such as this, there must be evidence of a "true municipal policy at issue, not a random event." *Phelan*, 463 F.3d at 790 (citing *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005);[4] accord, *Calosinski*, 24 F. 3d at 936 (more than a single incident usually required). The most that can be inferred from Count II is that this was an isolated event. Plaintiff makes boilerplate "pattern and practice" allegations regarding the use of a taser on the Decedent. No

---

[3] As argued above, Sangamon County is also an improper defendant in Count II as it was not the Defendants' employer.

[4] It is clear that plaintiff is proceeding on the second prong of the *Monell* test, *i.e.*, a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law. This is evidenced by the allegations in paragraphs 17 through 20 that the County and individual defendants have a "pattern and practice."

17

other specific instances of the improper use of a taser are alleged. Under the standards set forth in *Phelan* and *Calhoun* above, absent more specific allegations, no amount of liberal pleading construction can get plaintiff over the hump to establish the direct causal link between an alleged policy or custom of the Sheriff's Department and the alleged constitutional violations.

Moreover, while Plaintiff makes more specific allegations about Decedent being subjected to force which restricted his respiration, the Complaint completely lacks *any* allegations as to how the Department's use of force policy of the Department which restricts respiration of inmates.

In a nutshell, it appears that Plaintiff is attempting to affix liability against the Department under the fiction of an alleged policy when, in reality, she is seeking redress for an isolated incident involving the misdeeds of a few as-yet-unidentified individuals. Therefore, Count II should be dismissed for failure to state a claim upon which relief can be granted.[5]

## I.  The Failure To Train Theory Does Not Indicate Any Knowledge By The Department That Constitutional Deprivations Were Likely

In paragraph 17, Plaintiff alleges that the County and Individual Defendants have a pattern and practice of deploying taser guns without sufficiently training their officers regarding their use. This allegation fails to state a claim for failure to train because it does not allege any deliberate indifference by the Department to the rights of persons with whom jail officials come into contact.

There are only a limited number of circumstances in which a "failure to train" claim can be characterized as a municipal policy under Section 1983. *Robles v. City of Ft. Wayne,* 113 F.3d

---

[5]  Plaintiff also seeks relief in Count II (see paragraph E) for attorney's fees, costs and interest under 42 U.S.C. § 2000e-5. However, this is a citation to Title VII. As such, it is an improper statutory basis upon which to recover such items in a Section 1983 action.

60174130v1 884755

732, 735 (7th Cir. 1997). Inadequate police training may support a §1983 claim only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The *City of Canton* standard is met where, in light of the specific officer's duties, the need for more or different training is "obvious," and the existing inadequacy is likely to result in a constitutional violation. *City of Canton*, 489 U.S. 390. *Robles* teaches that the municipality would have to possess actual or constructive notice that such a failure to train would likely result in constitutional deprivations. *Robles*, 113 F. 3d at 735. This notice can be established through learning of a pattern of constitutional violations, or where a clear constitutional duty is implicated in recurrent situations that a particular police officer is likely to face. *Id.* (citations omitted).

Under either scenario, the finding of "deliberate indifference is derived from the City's failure to act in the face of actual or constructive notice" that such a failure to train is likely to result in constitutional deprivations. *Id.* (citing *Cornfield v. Consolidated High School District No. 230,* 991 F. 2d 1316, 1327 (7th Cir. 1993)).

In short, Plaintiff's complaint consists only of legal conclusions and only describes one incident of failing to properly use the taser, namely against the Decedent. That does not constitute a pattern and practice. Further, there are no allegations which suggest that the Department failed to act in the face of actual or constructive notice that such a failure to train is likely to result in constitutional deprivations. *Id*. Therefore, the Sangamon County Sheriff's Department cannot be held liable for failing to properly train its officers in the use of a taser involving a single arrestee.

60174130v1 884755

## <u>ARGUMENTS APPLICABLE TO COUNT III</u>

All Defendants (Williamson, Durr, Beckner, Correctional Officers Guy, Furlong, Cain, Hudgins, and Brauer, R.N., Ramsey, L.P.N., West, L.P.N. and the Sangamon County Sheriff's Department, Sangamon County, and the entity referred to as the "Sangamon County Jail") move to dismiss Count III for the reasons stated below.  In addition to the argument below, defendants adopt the arguments above in Section IV, subsections A through C.

### J.   The Sangamon County Sheriff's Department Cannot be Held Liable on *Respondeat Superior* Principles

For the reasons stated above, the Sangamon County Sheriff's Department cannot be held liable under *respondeat superior* principles for the allegedly unconstitutional acts of the individual defendants. Because there are no allegations of an unconstitutional custom, policy, or practice, there is no basis for liability against the Department in Count III. *Monell*, 436 U.S. at 691.

WHEREFORE, for the above and foregoing reasons, defendants pray that plaintiff's complaint be dismissed for failure to state a claim upon which relief can be granted.

June 2, 2008

/s/Andrew M. Ramage
J. William Roberts
broberts@hinshawlaw.com
D. Bradley Blodgett
bblodgett@hinshawlaw.com
Hinshaw & Culbertson LLP
400 S. 9th St., Suite 200
Springfield, IL 62701
Phone: 217-528-7375
Fax: 217-528-0075
E-mail: aramage@hinshawlaw.com
Ramage Attorney Bar No. 6256554
Attorneys for Defendants Sangamon County,
Sangamon County Sheriff's Department, Neil
Williamson, Terry Durr, Ron Beckner, Correctional
Officers Beckner, Todd Guy, Kevin Furlong, Candice
Cain, Sgt. Ron Hudgins, Lee Anne Brauer, RN,
Ladorise Ramsey, LPN and Nicey West, LPN

60174130v1 884755

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2008, I caused to be electronically filed DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

**Jon D Robinson**              Email: jrobinson@brelaw.com

**Sharon D Elvidge Kelley**     Email: shalaw@ameritech.net

and I hereby certify that on June_____, 2008, I mailed by United States Postal Service, the document(s) to the following non-registered participants:

NONE

> /s/Andrew M. Ramage
> Hinshaw & Culbertson LLP
> 400 S. 9th St., Suite 200
> Springfield, IL 62701
> Phone: 217-528-7375
> Fax: 217-528-0075
> E-mail: aramage@hinshawlaw.com
> Attorney Bar No. 6256554
> Attorney for Defendants Sangamon County,
> Sangamon County Sheriff's Department,
> Neil Williamson, Terry Durr, Ron Beckner,
> Correctional Officers Beckner, Todd Guy,
> Kevin Furlong, Candice Cain, Sgt. Ron
> Hudgins, Lee Anne Brauer, RN, Ladorise
> Ramsey, LPN and Nicey West, LPN

60174130v1 884755