UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| ESTATE OF AMON PAUL CARLOCK, JR., DECEASED, by Mary L. Andreatta-Carlock, Executor,<br>      Plaintiff,<br> v.<br><br>NEIL WILLIAMSON,<br>as Sheriff of Sangamon County; et al.,<br><br>      Defendants. | Case No. 08-3075 |

# ORDER

  In July 2009, Plaintiff Estate of Amon Paul Carlock, Jr. filed a Fourth Amended Complaint and Jury Demand (#138) against Neil Williamson, as Sheriff of Sangamon County, and other defendants. The action is brought pursuant to 42 U.S.C. § 1983. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiff has alleged a violation of federal law.

  In October 2010, Defendants filed Emergency Motion by Defendants for Telephone Conference and To Seal, or in the Alternative Strike, Plaintiff's Motion for Sanctions and Memorandum of Law in Support of Motion for Sanctions and All Exhibits Thereto (#274). Plaintiff subsequently filed Plaintiff's response to Defendants' Emergency Motion (#291) (hereinafter "Emergency Motion"). Defendants filed Defendants' Motion for Leave to File Reply (#296), which this Court denied. After reviewing the parties' pleadings and memoranda, this Court **GRANTS** Defendants' Emergency Motion **(#274)**.

## I.  Background

  Plaintiff brings suit against Defendants under 42 U.S.C. § 1983, alleging that decedent Amon Paul Carlock, Jr. (hereinafter "Carlock") was subjected to excessive force and received inadequate medical treatment while incarcerated in Sangamon County Jail. The following summary of events is taken from Plaintiff's complaint.

Carlock was incarcerated for pre-trial detention on October 9, 2007. Plaintiff alleges that Carlock was an insulin dependent diabetic, and that physicians at the jail failed to provide insulin or monitor his blood sugar levels. On November 15, 2007, a doctor at the jail ordered a blood test for Carlock. The results of that test indicated that Carlock required medical attention. On November 16, 2007, arrangements were made to transport Carlock to the hospital. As correctional officers attempted to prepare Carlock to be transported, Carlock was not cooperative; Plaintiff alleges Carlock's failure to cooperate was related to his medical condition. To restrain Carlock, Sgt. Guy tasered him. Then, Correction Officer Furlong applied force to Carlock's back, thus compressing his chest, while Carlock was face down on the ground. While Furlong held Carlock in this position, Carlock stopped breathing. By the time the previously scheduled ambulance arrived to transport Carlock to the hospital, Carlock had no pulse. He was pronounced dead several hours later.

In the course of discovery, Plaintiff came to believe that Defendants failed to preserve audio, video, and electronically stored information (ESI) connected to these events. Plaintiff filed Plaintiff's Motion for Sanctions for Spoilation of Evidence (#272). Plaintiff attached several exhibits that Defendants had produced in discovery. Defendants now assert that some of these attachments were inadvertently disclosed communications and information covered by attorney-client privilege or work product protection. In their Emergency Motion, Defendants sought immediate intervention by the Court to have Plaintiff's entire motion, memorandum, and exhibits temporarily sealed until the situation could be resolved. In response, on October 12, 2010, Magistrate Judge Cudmore issued a text order to temporarily seal certain attachments to Plaintiff's memorandum in support for its motion for sanctions.

This Court now addresses whether those documents sealed by Judge Cudmore, and certain other documents subsequently filed under seal by Plaintiff, should remain sealed. This requires the Court to address the issue of whether attorney-client privilege or the work product doctrine protects certain documents filed by Plaintiff, and if so, whether Defendants waived

privilege under FED. R. EVID. 502.  Additionally, Defendants ask the Court to consider whether Plaintiff violated FED. R. CIV. P. 26(b)(5), and whether sanctions are appropriate for any violations that may have occurred.

## II.  Standard

Attorney-client privilege applies where legal advice of any kind is sought from a professional legal adviser in his capacity as such, and the communications relate to that purpose, are made in confidence by the client, and are at his instance permanently protected from disclosure.  *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).  It may apply to a client's statements, and to an attorney's statements, where those communications constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence.  *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008).  The party seeking to invoke privilege has the burden to establish all the essential elements.  *White*, 950 F.2d at 430.  The scope of privilege may be narrow where it is in "derogation of the search for truth."  *Id*.

The work product doctrine protects materials prepared in anticipation of litigation or for trial by or for a party, or by or for a party's representative.  FED. R. CIV. P. 26(b)(3).  Where work product protection applies, materials are only discoverable upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case, and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  *Id*.

Both the attorney-client privilege and the work product privilege may be waived where a party discloses privileged materials.  FED. R. EVID. 502(b).  However, a disclosure does not operate as a waiver if the disclosure is inadvertent, the holder of the privilege or protection took reasonable steps to prevent disclosure, and the holder promptly took reasonable steps to rectify the error, including following Federal Rule of Civil Procedure 26(b)(5)(B).  *Id.*  The burden of proving these elements is on the party asserting privilege.  *Heriot v. Byrne*, 257 F.R.D. 645, 658 (N.D. Ill. 2009).

### III. Discussion

Defendants claim that various documents that Plaintiff has obtained through discovery are privileged, and they make specific arguments with respect to two documents. Additionally, Defendants argue that Plaintiff's motion for sanctions completely relies on these privileged materials, that without these materials there is no basis for a motion for sanctions, and that therefore, Plaintiff's motion for sanctions should be stricken or sealed. The two documents that Defendants specifically assert are privileged are a litigation hold spreadsheet and an e-mail between Defendant Lt. Beckner and his attorney.

*A. Litigation Hold Spreadsheet*

The first document in question is a spreadsheet containing information about litigation holds for the Sangamon County Sheriff's portfolio of federal litigation (hereinafter the "litigation hold spreadsheet"). The spreadsheet was created by Ms. Paula Tolbert, a Systems Administrator for the Sangamon County Sheriff's Department. Plaintiff indicates that this spreadsheet was obtained from a Jail server as part of ESI discovery. According to Plaintiff, Plaintiff's expert and Defendants' internal IT experts worked together to search the server using search word protocols which were agreed upon by the parties. The litigation hold spreadsheet was a result under this search.

Defendants respond with several arguments. First, they argue that the litigation hold spreadsheet is privileged under the work product doctrine. Second, they argue the litigation hold spreadsheet is subject to an Agreed Protective Order (#217; #311-10). Third, they argue that even if the spreadsheet is not privileged, it is not discoverable because it is not relevant.[1]

The first issue is whether the litigation hold spreadsheet falls within the protection of the work product doctrine. The work product doctrine protects materials prepared in anticipation of

---

[1] Defendants concede that the litigation hold spreadsheet would be relevant to an inquiry regarding spoilation, but Defendants contend that Plaintiff is not entitled to discovery of the spreadsheet without first making a threshold showing that spoilation has occurred.

4

litigation or for trial by or for a party or by or for a party's representative. FED. R. CIV. P. 26(b)(3). The purpose of the privilege is to establish a zone of privacy in which parties can prepare their case free from scrutiny or interference by an adversary. *See Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). The mere fact that litigation eventually follows creation of a document does not, by itself, cloak materials with the work product privilege. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996). Furthermore, even where the privilege applies, an opposing party may obtain the material if there is substantial need. Substantial need may be found where a plaintiff has demonstrated some likelihood or probability that the documents sought may contain evidence of bad faith. *Id.* at 977. Here, a Systems Administrator created the document as an internal organizational tool, to note that certain ESI related to cases in the spreadsheet must be preserved, and not automatically deleted after a given time. Though the spreadsheet is clearly related to pending litigation, it was not made as part of an effort to prepare or analyze a case, or otherwise aid litigation in any way. In this sense, the litigation hold spreadsheet is an ordinary business record, and work product privilege does not apply.

Next, Defendants argue that filing the litigation hold spreadsheet publicly constituted a violation of the Court's protective order. The protective order states: "The parties further agree that they will not disseminate the information garnered from the forensic examination to any third party, except (i) the parties' attorneys and/or experts . . ., (ii) on approval of defendants or (iii) as permitted by a court order." (#217, p. 2). Defendants contend that publicly filing the document constitutes dissemination of the information. The Court notes that this potential violation of a protective order may constitute a procedural violation, but this is unrelated to the substantive question of whether the litigation hold spreadsheet is privileged. The Court will return to this procedural issue below.

Last, Defendants argue that the litigation hold spreadsheet is not relevant, and so it is not discoverable. Defendants point out that the purpose of Plaintiff's forensic search was to try and harvest relevant ESI from the time period in question, or to verify defendants' claims that no relevant ESI existed from the time period in question. In contrast, the litigation hold spreadsheet

5

was created well after the Mr. Carlock's death, and it does not constitute evidence relevant to Plaintiff's claims. Defendants concede that, if Plaintiff presented some threshold showing of spoilation, Plaintiff would then be entitled to discovery to determine the extent of spoilation; however, Defendants argue that Plaintiff has no evidence of spoilation at this time, only a "hunch" that spoilation has occurred.

So, the relevant issue is: absent the litigation hold spreadsheet, has Plaintiff made a threshold showing that Defendants failed to place a litigation hold on materials related to the Carlock case at an appropriate time? In making this determination, a threshold cannot be placed too high, as Plaintiff, without relying on the spreadsheet, can only speculate as to its likely contents. However, placing the threshold too low may authorize fishing expeditions into privileged communications based on naked claims of bad faith. *See Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 977 (using similar reasoning to determine whether a party had substantial need to obtain privileged work product materials). Here, Plaintiff asks the Court to infer that the virtual absence of ESI produced by Defendants in discovery is, by itself, a threshold showing that ESI relevant to this case must have been destroyed in an automatic process. Defendants respond that no e-mails or ESI related to the Carlock case ever existed, other than what has already been produced. Essentially, Plaintiff is operating on assumption, while the Defendants are left in the uncomfortable position of trying to prove a negative.

The Court agrees with Plaintiff that the virtual absence of ESI produced by Defendants constitutes a threshold showing, authorizing inquiry in to whether Defendants failed to retain relevant documents. As such, the litigation hold spreadsheet is not privileged, and it is discoverable as to issues of spoilation. The Plaintiff may use the essential relevant content of the spreadsheet in all subsequent proceedings. However, Plaintiff has agreed that all non-Carlock information in the spreadsheet may be redacted. (#291, p. 2). The Court agrees that redacting the litigation hold spreadsheet to remove information about other cases is appropriate. Therefore, the Court orders that Plaintiff's exhibit #273-10 be stricken. Plaintiff may refile the single page of the exhibit that makes reference to this case, with other non-Carlock related information contained on that page redacted.

6

*B. Lt. Beckner E-mail*

Plaintiff's motion for sanctions referred to an e-mail exchange between Defendant Lt. Beckner and his attorney. Plaintiff described the content of this e-mail in its motion, and filed the e-mail with the Court under seal. Parties agree that Defendants' disclosure of the e-mail was inadvertent. Plaintiff discovered the e-mail in the course of ESI discovery, during which Plaintiff's IT expert spent many hours searching Defendants' ESI archives. Defendants argue that the e-mail is protected by attorney-client privilege, that they did not waive the privilege, and that Plaintiff's motion for sanctions must be stricken due to its reliance on this privileged communication. Plaintiff concedes that this e-mail falls within the scope of th privilege, but argues that Defendants waived privilege by granting Plaintiff unfettered access to the e-mail server, and failing to rectify the situation promptly after Plaintiff discovered the e-mail.

A disclosure does not operate as a waiver if the disclosure is inadvertent, the holder of the privilege or protection took reasonable steps to prevent disclosure, and the holder promptly took reasonable steps to rectify the error, including following Federal Rule of Civil Procedure 26(b)(5)(B). FED. R. EVID. 502(b). In applying FED. R. EVID. 502(b), the court is free to consider any or all of five factors set forth in *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387-88 (7th Cir. 2008) (see also *Heriot v. Byrne*, 257 F.R.D. 645 (N.D. Ill. 2009)). These factors are: (1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Judson*, 529 F.3d at 388. The Court will consider the three elements of FED. R. EVID. 502(b) in turn.

First, regarding the inadvertent nature of the disclosure, the parties agree that disclosure here was inadvertent. Furthermore, Plaintiff's expert discovered this e-mail in the course of ESI discovery over the course of many weeks, involving many hours of investigation. The large amount of data involved in this discovery weighs in favor of Defendants, as such errors are a common occurrence in ESI discovery.

7

Second, the parties dispute the facts regarding what steps Defendants took to prevent disclosure of the Lt. Beckner e-mail. Plaintiff asserts that Defendants gave Plaintiff unfettered access to its server. Plaintiff writes: "Defendants took no steps to prevent Plaintiff's expert from obtaining a complete copy of the Novell email server where it was found. In fact, Defendants actually invited Mr. Garrett to copy the entire server." (#292, p. 3). In contrast, Defendants point to numerous e-mail exchanges between counsel that indicate Defendants repeatedly took appropriate steps to protect privilege in the course of Plaintiff's forensic examination of Defendants' servers. In an e-mail, Defendants' counsel wrote:

> We are inclined to think that we should agree upon an order to be submitted to the court for approval which will include a protective order that in the event the plaintiff obtains irrelevant or improper information the plaintiff cannot disclose any material and sets forth a stipulation as to what the key words will be.

(Ex. G, #.311-7, p. 2). A protective order related to the forensic examination was entered in March 2010. That order states that "Defendants shall make available the Department's computers for forensic examination on the terms and conditions agreed to by the parties' attorneys.", and the order provides that information may not be disseminated except to parties' experts, by agreement, or by court order. (#217, p. 2).

Later on, when Plaintiff's expert was in the midst of his forensic examination, Defendants' counsel wrote:

> On a related note, I trust, as officers of the court, that if your expert has come (or does come) across privileged emails involving our law firm that you are not reading them. Please confirm whether he has uncovered such emails and how this has been handled.

(Ex. L, #311-12, p. 2). Plaintiff did not respond to this request.

8

This Court rejects Plaintiff's assertions that Defendants granted it unfettered access to its servers, given the language of the protective order and the communications between the parties. The parties had repeated discussions about key word limitations, they entered in to a broad protective order, and Defendants repeatedly and specifically emphasized their concern over how Plaintiff was handling any attorney-client communications it came across. Defendants took reasonable steps to prevent disclosure.

Third, the parties dispute whether Defendants took reasonable steps to rectify the error after Plaintiff discovered the Lt. Beckner e-mail. On August 24, 2010, Plaintiff's counsel wrote to Defendants that it had found several emails which Defendants may claim as attorney client privileged. (Ex. N, #311-14, p. 2). Plaintiff added that it believed privilege may have been waived, and it would not be destroying these materials. In a prompt response, Defendants' counsel indicated that Defendants did not waive any privilege, and asked for a complete log of all communications from a Hinshaw attorney in Plaintiff's possession. Throughout the next six weeks, the parties had several "meet and confer" sessions, but Plaintiff's counsel never notified Defendants of exactly what he had found in discovery or provided the log that Defendants requested. Plaintiff filed its motion for sanctions on October 6, six weeks after it first notified Defendants it had potentially privileged materials.

Plaintiff asserts that, given its notice to Defendants, Defendants had the burden to seek a protective order from the court in a timely manner, to prevent disclosure of the privileged e-mails in Plaintiff's possession. Defendants respond that Plaintiff's notice that it had discovered "several emails" was not reasonably specific. Therefore, it is unclear what steps Defendants may have been able to take at that time, given their limited information. Furthermore, Defendants were not neglecting the case, but rather were meeting and conferring with Plaintiff on a regular basis in an attempt to resolve the dispute on their own. Last, given the protective order in place and Plaintiff's obligations under FED. R. CIV. P. 26(b)(5)(B), the Defendants were entitled to feel

reasonably assured that Plaintiff would not be publicly disclosing Defendants' attorney-client communications. Given all of this, the Court finds that Defendants took reasonable steps to rectify disclosure.

As the Court has found that Defendants inadvertently disclosed the Lt. Beckner e-mail, and that they took reasonable steps to prevent and rectify disclosure of the e-mail, the Court concludes that Defendants did not waive privilege. Because the e-mail is privileged, the Court cannot consider it for any purpose, including Plaintiff's pending motion for sanctions. Therefore, the Court hereby grants Defendants' motion and orders that Plaintiff's motion for sanctions be stricken. Plaintiff may re-file its motion if Plaintiff omits any reference to the Lt. Beckner e-mail or its contents.

*C. Procedural Violations*

Defendants have asserted that Plaintiff has violated Federal Rule of Civil Procedure 26(b)(5), as well as the Court's March 2010 protective order (#217). These constitute procedural violations which are unrelated to the substantive issues affecting determination of whether documents produced in discovery are privileged. However, as the Court's order here and the Court's order responding to a motion to intervene by GateHouse Media (#327) both indicate, this Court notes that procedural violations have occurred. To the extent that Defendants seek sanctions or relief beyond what this Court has already granted, Defendants are directed to file a separate motion for sanctions.

**IV. Summary**

For the reasons stated above, Defendants' Emergency Motion by Defendants for Telephone Conference and To Seal, or in the Alternative Strike, Plaintiff's Motion for Sanctions and Memorandum of Law in Support of Motion for Sanctions and All Exhibits Thereto **(#274)** is **GRANTED**. Plaintiff's Motion for Sanctions for Spoilation of Evidence **(#272)**, Plaintiff's Memorandum in Support of Sanctions for Defendants' Spoilation of Evidence **(#273)**, and all attached exhibits to those filings are hereby **STRICKEN**. Plaintiff may refile its motion for

10

sanctions with no reference to privileged materials. Plaintiff may also refile the litigation hold spreadsheet, redacted according to the Court's instructions above.

ENTER this 26th day of January, 2011.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE