# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ESTATE OF AMON PAUL CARLOCK, JR., Deceased, by Mary L. Andreatta-Carlock, Executor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  08-3075 |
| NEIL WILLIAMSON, AS SHERIFF OF SANGAMON COUNTY; ANTHONY SACCO, CHIEF DEPUTY; TERRY DURR, JAIL SUPERINTENDENT; WILLIAM STRAYER, ASSISTANT JAIL SUPERINTENDENT; LT. RON BECKNER, ADMINISTRATOR OF SANGAMON COUNTY JAIL; LT. CANDACE CAIN; LT. TAMMY POWELL; SGT. TODD GUY; CO KEVIN FURLONG; NURSE LEE ANNE BRAUER, R.N.; NURSE NIECEY WEST, L.P.N.; NURSE LUCY RAMSEY, L.P.N.; JOSEPH MAURER, M.D.; CHAUNCEY C. MAHER, III, M.D. and SANGAMON COUNTY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

On October 9, 2007, Anon Paul Carlock was discharged from St.

John's Hospital to the Sangamon County Jail.  At that time, Carlock was in stable condition, although he had chronic medical conditions including diabetes, obesity, and depression.  On November 16, 2007, Carlock left the Sangamon County Jail on a stretcher, not breathing and without a pulse.  He had lost approximately 30 pounds.  He had numerous broken ribs, abrasions, contusions, and two broken front teeth.  He was also suffering from acute renal failure and lithium toxicity.  Carlock was pronounced dead at the hospital.  What happened during those 39 days in jail is in dispute.

Defendants argue they are entitled to summary judgment on the claims.  See Defendant Dr. Joseph Maurer's Motion for Summary Judgment (d/e 390); Defendant Dr. Chauncey Maher's Motion for Summary Judgment (d/e 396); Defendant Todd Guy's Motion for Summary Judgment (d/e 405); and the Motion for Summary Judgment filed by Defendants Ron Beckner, Lee Anne Brauer, Candace Cain, Terry Durr, Kevin Furlong, Tammy Powell, Lucy Ramsey, Anthony Sacco, William Strayer, Niecy West, and Sheriff Neil Williamson (these

defendants and Defendant Guy are hereinafter referred to as the County Defendants).  Given the factual disputes, Defendant Guy, Dr. Maurer, and Dr. Maher's Motions for Summary Judgment (d/e 390, 396, 405) are DENIED.  The remaining Defendants' Motion for Summary Judgment (d/e 407) is GRANTED IN PART and DENIED IN PART.  Defendants Williamson, Sacco, Durr and Strayer are entitled to summary judgment on Count I because Plaintiff has pointed to no evidence supporting why those defendants should be liable.

## I.  ANALYSIS

The Court has read the pleadings, all of the documents submitted, and has held oral argument on the Motions.  While the Court need only consider the material cited by the parties, the Court may, and did in this case, consider other materials in the record.  See Fed.R.Civ.P. 56(c)(3).

As an initial matter, all of the motions to strike are denied. Although some of the expert's reports submitted by Plaintiff were not sworn, their sworn depositions were also part of the record.  See Loeffel Steel Products, Inc. v. Delta Brands, Inc., 379 F. Supp. 2d 968, 984

(N.D. Ill. 2005) (wherein the court found the expert's unsworn report inadmissible but relied on the expert's deposition testimony when considering the summary judgment motion).

James McLemore's Affidavit is also adequate.  See Fed.R.Civ.P. 56(c)(4) (affidavits must be made on personal knowledge, set forth admissible facts, and show the declarant is competent to testify on the matters stated).  A witness may testify about his observations regarding another person's condition.  See Watson v. Allen Cnty. Sheriff's Officers, 2013 WL 4540597, at *4 (N.D. Ind. August 27, 2013).  McLemore's Affidavit admittedly contradicts some of the facts Plaintiff admitted were undisputed and that simply adds to the questions of fact remaining in this case.

The Court also finds that Carlock's status as a federal detainee does not render § 1983 inapplicable.  See Belbachir v. County of McHenry, 726 F.3d 975 (7th Cir. 2013) (finding that where "the contract did not federalize McHenry County Jail, which continued to house nonfederal as well as federal prisoners," the claim was properly brought under §1983);

<u>Lewis v. Downey</u>, 581 F.3d 467, 471 n. 3 (7th Cir. 2009) (noting the issue in a footnote and refusing to decide it but also expressing doubt that the contractual relationship between the federal government and a local correctional facility to house federal inmates "does anything to change the status of county jail employees as state actors." ) (emphasis omitted.)

Finally, the appropriate standard governing the § 1983 excessive force and medical treatment claims is the Fourteenth Amendment.  The Fourth Amendment standard applies to claims up to the point of the judicial determination of probable cause.  <u>Lopez v. City of Chicago</u>, 464 F.3d 711, 719 (7th Cir. 2006).  The Fourteenth Amendment applies to the period in between a judicial determination of probable cause and conviction.  <u>See</u> <u>Smith v. Sangamon Cnty. Sheriff's Dep't</u>, 715 F.3d 188, 191 (7th Cir. 2013) (Fourteenth Amendment applies to pretrial detainees).  In this case, Carlock was arrested pursuant to an arrest warrant on October 9, 2007.  <u>See</u> <u>United States v. Carlock</u>, 07-30111.  Therefore, the Fourteenth Amendment standard applies to Plaintiff's §

1983 claims.  While the appropriate standard for an excessive force claim

under the Fourteenth Amendment is unclear, this Court has generally

followed <u>Wilson v. Williams</u>, 83 F. 3d 870, 875 (7th Cir. 1996) (noting

that the appropriate standard is neither wholly objective nor wholly

subjective;  a plaintiff must prove deliberate indifference but the court

must also examine whether the officials behaved in a reasonable way in

light of the facts and circumstances).

A.    **Questions of Fact Preclude Summary Judgment on Count I**
      **(Excessive Force)**

Questions of fact preclude summary judgment on the excessive

force claims against Defendants Cain, Powell, Guy, Furlong, and Beckner.

Taking the evidence and inferences in the light most favorable to

Plaintiff, the facts pertaining to the November 16, 2007 incident show

that Carlock was not combative and/or had been subdued when the

officers continued to apply force.  <u>See</u> McLemore Affidavit; evidence

pertaining to Carlock's medical condition; <u>see</u> <u>also</u> <u>Abdullahi v. City of</u>

<u>Madison</u>, 423 F.3d 763, 772 (7th Cir. 2005) (finding that the decedent's

"undisputed attempts to 'squirm' or arch his back upward while he was

being restrained may not constitute resistence at all, but rather a futile attempt to breathe while suffering from physiological distress 'akin to drowning'").  Medical and circumstantial evidence is sufficient to create triable issues of fact in excessive force cases.  <u>Abdullahi</u>, 423 F.3d at 772 (finding that the officer's assertion that he merely put enough pressure on the decedent to stop him from squirming was not the only account of the incident where the medical evidence showed the individual suffered injuries consistent with extreme external pressure); <u>see</u> <u>also</u> <u>Plakas v. Drinski</u>, 19 F.3d 1143, 1147 (7th  Cir. 1994) ("The award of summary judgment to the defense in deadly force cases may be made only with particular care where the officer defendant is the only witness left alive to testify").

Moreover, Defendants Cain, Powell, Guy, Furlong, and Beckner are not entitled to qualified immunity on summary judgment.  It was clearly established on the day Carlock died that an officer cannot continue to use force on a person who is not resisting or who is subdued.  <u>Abbott v. Sangamon County, Ill.</u>, 705 F.3d 706, 732 (7th Cir. 2013) (holding that

it was clearly established on June 25, 2007 that a police officer could not use significant force on a nonresisting or passively resisting suspect) (citing cases involving various uses of force including grabbing, throwing, and shoving);  Lewis, 678 F.3d at 528-29 (clearly established in 2006 that a taser could not be used against a prone, weakened, and docile prisoner who had been told to rise once, was not given a chance to respond, and was not warned that he would tased if he did not rise).

In addition, drawing all reasonable inferences in Plaintiff's favor, Carlock was obviously seriously ill, was being taken to the hospital, and the officers should have known that holding him in the prone position could cause his injury or death.  The law governing excessive force claims was clearly established on November 16, 2007 that compressing the lungs of an obviously vulnerable person might kill him.  See Richman v. Sheahan, 512 F.3d 876, 882-83 (7th Cir. 2008) (involving incident that occurred on November 18, 2007 when officers attempted to remove the decedent from the courtroom and relying on cases from as long ago as 1996 under the Fourth Amendment standard and 2002 under the Eighth

Amendment standard when finding that a reasonable officer would know that compressing the lungs of a morbidly obese person might kill him).[1]

As to the two October 16, 2007 incidents involving Defendants Guy and Powell, Plaintiff admitted the facts alleged by those Defendants which show that Carlock was combative.  However, no warning was given prior to the use of the taser.  See Forrest v. Prine, 620 F.3d 739, 745 (7th Cir. 2010) (noting the officer warned the plaintiff several times that noncompliance would result in tasing); Lewis, 581 F.3d at 479 (noting that prior case law made it clear that the use of chemical agents should generally follow adequate warnings).  Certainly, situations can arise that justify the immediate use of a taser without the benefit of a warning. Lewis, 581 F.3d at 478 ("In a jail or prison setting, it is not hard to imagine any number of scenarios that would justify the immediate and unadvertised use of summary force, including taser guns").  Moreover, a reasonable juror could conclude that the force used on October 16, 2007

_____

[1] Defendants argued at the hearing that Richman is distinguishable in part because there was no reason to endanger the decedent's life in order to remove him with such haste.  But in this case, there was likewise no reason to endanger decedent's life to put his shirt on to take him to the hospital.

was excessive under the Fourteenth Amendment.

Further, qualified immunity does not protect Defendants because Plaintiff's evidence permits an inference that Carlock posed no real threat to anyone in spite of his combativeness and that Carlock's condition rendered him unable to comply with the officers' commands.  See, e.g., Lewis, 581 F.3d at 479 (finding that a reasonable officer would have known that using a taser gun on a prone, weakened, and docile prisoner who was told to rise one time and was not warned that a taser would be used against him if he failed to comply would violate the prisoner's constitutional rights).   Further development of the facts at trial is required before a determination on qualified immunity can be made. See, e.g., Chelios v. Heavener, 520 F.3d 678, 692 (7th Cir. 2008) (noting, in a Fourth Amendment case, that further factual development was necessary before the court could determine whether the use of force was plainly excessive).

However, Defendants Williamson, Sacco, Durr, and Strayer are entitled to summary judgment on Count I.  Not one of these defendants

was present during the incidents.  See Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 614-15 (7th Cir. 2002) (a supervisor must be personally involved in the conduct at issue to be liable under § 1983). Plaintiff has not pointed to any evidence that would support an excessive force claim against Defendants Williamson, Sacco, Durr, or Strayer.

B.   Questions of Fact Preclude Summary Judgment on Count II

Defendants are not entitled to summary judgment on Count II, the failure to provide appropriate medical treatment claim.  The facts, taken in the light most favorable to Plaintiff, show that Carlock had serious medical conditions and that the Defendants were deliberately indifferent to those medical conditions.  See Henderson v. Sheahan, 196 F.3d 839, 844 n. 2 (7th Cir. 1999) (the Fourteenth Amendment protects pretrial detainees under the same standard as the Eighth Amendment).

The medical evidence, taken in the light most favorable to Plaintiff, shows that Carlock was visibly deteriorating and no one was doing anything to help him.  Carlock was not being given the medication

prescribed to him at the hospital.  He was not on sliding-scale insulin.[2]

In fact, Carlock did not receive 1/3 of his medications while at the jail.

An inference can be drawn from the evidence that this was due in part to

Carlock not coming to the "chuckhole" in a timely manner.  He was not

eating and missed at least 1/3 of his meals.  Dr. Maher noted Carlock's

thinking was not reality based.  Dr. Maurer saw Carlock two days before

he died, and Carlock had feces-stained clothing and was tremulous.

Nonetheless, when told of Carlock's extremely abnormal lab results the

evening of November 15, 2007, Dr. Maurer did nothing.  The nurses

were also aware of Carlock's condition.  See Holloway v. Delaware Cnty.

Sheriff, 700 F. 3d 1063, 1075 (7th Cir. 2012), quoting Rice ex rel. Rice

v. Correctional Medical Servs., 675 F.3d 650, 683 (7th Cir. 2012) (a

nurse acts with deliberate indifference if she "'ignore[s] obvious risks to

an inmate's health' in following physicians' orders"); see also Smego v.

Mitchell, 723 F.3d 752, 757 (7th Cir. 2013) (dental assistant could be

deliberately indifferent by failing to bring the plaintiff's complaints of

---

[2] Generally, this means that the person's dose of insulin is determined on the basis of his blood sugar results.

pain to the doctor's attention and telling the plaintiff not to be a pest).

The Court is particularly concerned with Defendant Nurse Ramsey's failure to use the defibrillator and start CPR on Carlock when, under the facts taken in the light most favorable to Plaintiff, Carlock was not breathing and had, at best, a weak carotid pulse. Defendant Guy only saw Carlock take one breath, and Defendant Ramsey did not continue to monitor Carlock's breathing. See also Dr. Maurer Dep. p. 121-123 (noting that if Carlock caught his agonal[3] breath and his heart was failing, that would justify hooking him up to the defibrillator and beginning CPR).

Defendants argue that there is no evidence that the delay in Carlock's treatment from the evening of November 15, 2007 to the morning of November 16, 2007 caused him harm. However, a question of fact remains whether the delay exacerbated Carlock's condition or unnecessarily prolonged his pain. See, e.g. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010); see also medical evidence that Carlock's BUN

---

[3] Agonal is defined as "[r]elating to the process of dying or the moment of death." Stedman's Medical Dictionary, 39-40 (28th Ed.).

rose from 99 to 140 between November 15 and November 16, 2007; Dr.

Jennison's Dep. p. 28 (testifying that a BUN greater than 140 is no

longer measurable).

Dr. Maurer and Dr. Maher argue that their alleged deliberate

indifference was not the proximate cause of Carlock's death.

Causation is a necessary element in a § 1983 claim.  The act must be the

cause in fact of the injury (that is, the injury would not have occurred

absent the conduct) and the act must be the proximate cause of the

injury (that is, the injury is of the type that a reasonable person would

see as a likely result of his conduct).  Whitlock v. Brueggemann, 682 F.3d

567, 582 (7th Cir. 2012).   However, proximate cause is generally an

issue for the jury.  Gayton v. McCoy, 593 F.3d 610, 624 (7th Cir. 2010).

Summary judgment should be granted on the issue of causation " "only

in the rare instance that a plaintiff can proffer no evidence that a delay in

medical treatment exacerbated an injury." Gayton, 593 F.3d at 624.

While Carlock's medical condition the morning of November 16

was treatable, Dr. Stephen Jennison, the treating cardiologist at the

hospital, testified that the acute renal failure, hyperkalemia, and high potassium caused Carlock's death.  Jennison Dep. p. 41; see also Stern Dep. p. 77 (Carlock likely would have survived had he been sent to the emergency room and not had the altercation with the officers). Therefore, a reasonable juror could reasonably conclude that the failure to treat those conditions caused Carlock's death.  Moreover, a genuine issue of material fact exists whether Carlock's increasingly erratic behavior foreshadowed yet another confrontation with the correctional officers, making Carlock's death preventable and foreseeable.  Carlock's prior confrontations with correctional officers were memorialized in the Nurses Notes.  See Group Exhibit R (d/e 410) (reflecting that on November 15, Carlock was put in the restraint chair); Exhibit X (d/e 411-7) (reflecting that on October 16, 2007, Carlock was "tased, OC[4], placed in restraint chair"); and Exhibit X (containing November 15, 2007 notation: "√'ed straps [illegible] in restraint chair.  USM updated on

---

[4] OC is Oleoresin Capsicum (pepper spray).

inmate.  Instructed to use any means necessary.  Faxed lab results to Dr. Maurer").

In addition, Plaintiff's expert, Dr. Joel Silberberg, a board certified psychiatrist who is experienced in treating offenders in correctional settings, testified that both the confrontation and Carlock's injuries were foreseeable.  Silberberg Dep. p. 97 (testifying that "somebody who is not under control because of electrolyte disturbances, metabolic disturbances, diabetes out of control, psychiatric illness out of control, it is foreseeable that there will be an interaction where the patient is confused, not responding appropriately to reality, it is foreseeable that he is going to be injured by jail staff when there is a confrontation").

Under the facts taken in the light most favorable to Plaintiff, Defendants are therefore not entitled to qualified immunity.  See Estate of Gee ex rel. Beeman v. Johnson, 365 Fed. Appx. 679, 683-84 (7th Cir. 2010) (unpublished) (genuine issue of material fact precluded qualified immunity where, in April 2005, a severe diabetic experienced unstable blood sugar levels, suffering intense pain, and refusing to eat and hydrate;

the decedent "was clearly in terrible shape, and he was deteriorating right before everyone's eyes").

## C.   Questions of Fact Preclude Summary Judgment on Counts III and IV (Monell Liability)

A § 1983 claim can be brought against a local governing body when an official policy or custom is the "moving force" behind the deprivation of a constitutional right.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 575 (1978).  This can occur in one of three ways: "(1) an express policy that, when enforced, causes a constitutional deprivation, (2) a wide-spread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."  Abbott v. Village of Winthrop Harbor, 205 F.3d 976, 981 (7th Cir. 2000), quoting Baxter by Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 735 (7th Cir. 1994) (internal citations omitted).  A plaintiff must also show a direct causal connection between the policy or practice and the injury.  Rice, 675 F.3d at 675.  In addition, a failure to train may

be a basis for municipal liability but the "plaintiff must show that the

failure to train reflects a conscious choice among alternatives and evinces

a deliberate indifference to the rights of the individuals with whom those

employees will interact." Id.

Having reviewed the entire record, the Court finds sufficient

evidence to support a municipal liability claim based on excessive force

under both a failure to train theory and based on the medical policies

that arguably led to Carlock's demise.[5]

## D.    Questions of Fact Preclude Summary Judgment on the State Law Claims (Counts V, VI, VII, VIII, IX, X, XI)

The County Defendants are not entitled to state law immunity as a

matter of law.  Questions of fact remain whether their conduct was willful

---

[5] At the hearing, Plaintiff's counsel denied there was a policy of not using sliding-scale insulin.  However, in her response, Plaintiff stated Dr. Maurer "established a policy of not placing insulin using diabetics, such as Carlock, on a sliding scale for insulin." Response, p. 29 (d/e 506); see also Brauer Dep. p. 24 ("Dr. Maurer did not use a sliding scale"); Brauer Dep p. 26 ("And the reason those were not transcribed is because Dr. Maurer does not use sliding scales"); Dr. Maurer Dep. p. 62 (explaining that Carlock was not on sliding scale insulin because Dr. Maurer prefers to know when and how he is eating, when his blood sugars are high and low and adjust); but see West Dep. p. 121 (agreeing "it's not a policy that absolutely says he can't have it" and that she had given sliding scale insulin to an inmate in the Sangamon County Jail).

and wanton.  <u>See</u> 745 ILCS 10/4-105 and 745 ILCS 10/2-202[6]

(containing willful and wanton exception).  The County Defendants have

not demonstrated that they are entitled to immunity under 745 ILCS

10/2-201 because the public employee must (1) hold a position involving

either the determination of policy or the exercise of discretion and (2) the

act or omission must be both a determination of policy and an exercise of

discretion.  <u>Harinek v. 161 N. Clark St. Ltd. P'ship</u>, 181 Ill. 2d 335, 341

(1998).  The facts in the record do not allow that determination to be

made at this time as a matter of law.

Finally, because the Court has not found the individual employees

immune, the Sheriff's Department is not entitled to immunity under 745

ILCS 10/2-109 (providing immunity to the public entity when the

employee is not liable).

Further, Dr. Maurer and Dr. Maher are not entitled to immunity

---

[6] In addition, the immunity provided under 2-202 "does not extend to all
activities of police officers while on duty, but only to acts or omissions while in the
actual execution or enforcement of a law." <u>Hudson v. City of Chicago</u>, 378 Ill. App.
3d 373, 388 (2007).  Whether an officer is executing and enforcing the law is a
question of fact.  <u>Id.</u>

under 745 ILCS 10/6-105 and 6-106 because questions of fact remain as to whether they are public employees.  See Thede v. Kapsas, 386 Ill. App. 3d 396, 400 (2008) (whether a worker is an employee or an independent contractor is a question of fact and summary judgment should not be granted unless the evidence documenting the relationship is so clear as to be undisputed).  Moreover, even if Dr. Maurer and Dr. Maher are public employees, section 6-106 does not confer immunity on public employees who have caused a person to suffer an injury due to the negligent prescription of medical treatment and/or the negligent administration of medical treatment.  Michigan Ave. Nat'l Bank v. County of Cook, 191 Ill. 2d 494, 511 (2000).  Some of Plaintiff's allegations involve negligent medical treatment.

## II. CONCLUSION

For all these reasons, Defendant Dr. Joseph Maurer's Motion for Summary Judgment (d/e 390); Defendant Dr. Chauncey Maher's Motion for Summary Judgment (d/e 396); Defendant Todd Guy's Motion for Summary Judgment (d/e 405) are DENIED in full.  The Motion for

Page 20 of  21

Summary Judgment filed by Defendants Ron Beckner, Lee Anne Brauer, Candace Cain, Terry Durr, Kevin Furlong, Tammy Powell, Lucy Ramsey, Anthony Sacco, William Strayer, Niecy West, and Sheriff Neil Williamson (d/e 407) is GRANTED IN PART AND DENIED IN PART. Defendants Williamson, Sacco, Durr and Strayer are entitled to summary judgment on Count I only.  This case is set for a settlement conference October 11, 2013 at 1:30 p.m. in Springfield before United States District Judge Harold A. Baker.  Persons with full authority to settle shall be present at the settlement conference.

ENTER: October 3, 2013

FOR THE COURT:

_____ s/Sue E. Myerscough _____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE